Filed 7/22/14  P. v. Somoza CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>              Plaintiff and Respondent,<br><br>       v.<br><br>EDGAR SOMOZA,<br><br>              Defendant and Appellant. | B250592<br><br>(Los Angeles County<br> Super. Ct. No. BA394947) |

APPEAL from the judgment of the Superior Court of Los Angeles County. Dennis J. Landin, Judge.  Affirmed.

Doris M. Leroy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Timothy M. Weiner, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Edgar Somoza was convicted by jury of two counts of sex/sodomy with a child under the age of 10 and one count of forced oral copulation with a child under the age of 10.  The two victims were the daughters of defendant's girlfriend.  In this appeal, defendant contends:  (1) the court committed prejudicial error by denying his request for a continuance based on the prosecution's presentation, shortly before trial, of new forensic test results on two pieces of evidence; (2) the prosecutor committed prejudicial misconduct during closing argument; and (3) to the extent any portion of the misconduct argument is deemed forfeited, then defense counsel should be found to have provided ineffective assistance by failing to timely and properly object.  We find no error and therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Because defendant has not raised a substantial evidence question, we state the facts briefly and summarize only the material procedural issues.

In March 2012, defendant was living with his girlfriend, Yancy,[1] and her children, including eight-year-old Y.M. and seven-year-old G.M., in an apartment in Los Angeles.  March 11 was a Sunday, the day Yancy normally went to the laundromat to do laundry.  That morning defendant dropped Yancy off at the laundry as usual and returned to the apartment.  Both Y.M. and G.M. were still in their beds in their room.  Defendant went into the girls' bedroom, picked up Y.M. and carried her back to his bedroom.

Defendant made Y.M. lie on her back on his bed, took off her clothes and his, and got on top of her.  He engaged in sexual intercourse with Y.M., and only stopped when he received a phone call from Yancy.  Defendant then ejaculated on Y.M.'s stomach, wiping the ejaculate off of himself and Y.M. with one of his socks he had thrown on the floor.  He told Y.M. to go back to her room and not say anything to her mother.

Yancy thought defendant sounded agitated when she called from the laundry, so when she got home, she asked the girls if something had happened.  After being pressed

---

[1]     We use the mother's first name only for the sake of privacy, intending no disrespect by the informality.

2

by her mother, Y.M. eventually explained what happened, including that defendant had wiped up the ejaculate with the sock, and G.M. also disclosed an incident of abuse. Yancy confronted defendant when he got out of the shower. Defendant denied the girls' story but eventually left the apartment. Yancy called the police. She later looked for and found the wet sock on the floor of the bedroom she shared with defendant. She put the sock into a plastic "Ziploc bag" along with Y.M.'s underwear, T-shirt and pants, and turned the bag over to the police.

During interviews with the police, as well as rape treatment counselor Nicole Farrell, Y.M. explained what had happened that morning, and described similar incidents that occurred on previous Sundays when her mother was doing laundry. G.M. described an incident of forced oral copulation in the living room. During some of the interviews, and during their testimony at the preliminary hearing, the girls, particularly G.M., the younger child, partially recanted or stated some inconsistent facts.

Defendant was charged by information with three counts: one count of oral copulation/sexual penetration with a child under 10 years of age, victim G.M. (Pen. Code, § 288.7, subd. (b)[2]), and two counts of sexual intercourse/sodomy with a child under 10 years of age, victim Y.M. (§ 288.7, subd. (a)). Defendant pled not guilty.

During pretrial proceedings, the prosecution conducted DNA testing on the sock and Y.M.'s underwear. Defendant's seminal fluid was confirmed on both items. Neither the prosecution nor defense had any type of testing performed on the other two items of clothing from the plastic bag (Y.M.'s T-shirt and pants). There is no dispute the prosecution's forensic test results for the sock and the underwear were timely disclosed to defendant.

On March 11, 2013, the case was called for trial in the master calendar department. Before the parties answered ready, the prosecutor apparently advised defense counsel, off the record, that he had decided to test Y.M.'s T-shirt and pants for

---

[2]    All further undesignated section references are to the Penal Code.

biological material, and that the report of the results was anticipated to be available within a couple of days.  Both parties then advised the court they were ready to proceed.  However, trial was put over to March 13, because defendant, although in custody, was not present.[3]

Later that day, defense counsel reconsidered the wisdom of his agreement to answer ready despite the new testing, and filed a written motion requesting a continuance of the trial to allow for his expert's consideration of the new test results once they were received from the prosecutor.  On the morning of March 13, 2013, the parties appeared in the master calendar department and the prosecution again answered ready.  Defense counsel said he was not ready and noted the filing of his motion.

The master calendar judge inquired of the prosecutor about the nature and status of the new testing being performed.  The prosecutor advised that no DNA tests were going to be run, only review of the T-shirt and pants for biological material, primarily seminal fluid.  The court denied defendant's motion, stating that "over defense objection, I'm deeming you ready."

When the parties reported to their assigned trial department, defense counsel renewed his motion for a continuance.  The prosecutor reported that he understood the testing would be completed by the following day, or Friday, March 15 at the latest.  The court ordered:  "So I'll deny your motion without prejudice.  You can raise it again depending on the results of the test and what you think you may have to do.  Maybe what we should do is resolve this issue before swearing in a panel."  The court and parties then proceeded with voir dire.

At the end of the first day of trial, the prosecutor reported that his expert had completed the serology tests and a written report would be completed Friday.  The court responded:  "All right.  We'll go from there.  If we have to declare mistrial, if the defense expert needs substantial time to respond, then we'll go from there."

---

**3**      The March 11, 2013 minute order states defendant was a "miss-out" so the trial was continued two days.

4

The next morning, defense counsel explained a key part of his defense was that, since all four items of clothing were placed in the same bag by the girls' mother and turned over to the police that way, the seminal fluid on the sock contaminated the other items of clothing. Defendant's version of what happened was that he had masturbated in bed, alone, and had wiped himself off with the sock. But if the test results on the other two items of clothing did not show they also had seminal fluid, that would undermine the contamination theory, and counsel might proceed differently in opening statement.

Defense counsel requested a brief continuance until the following Tuesday, March 19, based on the prosecutor's representation the report would be provided by Friday, and the T-shirt and pants would also be provided to his expert that same day for independent review. Defense counsel argued that since the court had already indicated it would be dark on Monday, there would be minimal delay for the jurors. The prosecutor once again confirmed only basic serology tests were being done, not more time-consuming DNA testing. He also argued the girls' mother and both girls were in the courthouse, ready to start with testimony and therefore objected to any continuance.

The court expressed its desire to avoid having the young victims testify more than once. Both the prosecutor and defense counsel concurred. The court then ruled: "I'll grant the request to recess the trial until Tuesday. What we'll do is get the phone numbers of all of the jurors in the event that there has to be a further continuance based on what you learn from the report tomorrow. You should assume, for planning purposes, that they will find some biological material. Get your experts in place and prepare any appropriate orders to have materials delivered to your expert and expedite this obviously."

Trial resumed on Tuesday, March 19. The prosecutor reported that testing had been completed on Friday as expected, and the report had been immediately turned over to defendant and his expert. The testing revealed that Y.M.'s T-shirt and pants contained both seminal fluid and epithelial cells. The two items of clothing were also transported to the defense expert's lab on Friday. The prosecutor forwarded the lab notes related to the

5

formal written report to defense counsel and the defense expert on Monday, March 18 shortly after he received them from his lab.

Defense counsel requested a mistrial, or alternatively a continuance to the following Monday, explaining that his expert had insufficient time to respond to the new report, which in turn impacted counsel's ability to adequately cross-examine the prosecution's expert. Specifically, defense counsel said his expert had first received the lab notes on Monday, not on Friday with the report and the evidence, and his expert had said the notes were "essential" to his review of the findings.

The prosecutor adamantly opposed a mistrial, as well as any further continuance, explaining that the two minor victims were once again in the courthouse ready to proceed. After allowing some additional argument, the court denied defendant's request for a mistrial and the request for another continuance.

For the remainder of that week, the prosecutor presented the testimony of the victims, their mother, and the police officers and medical staff that interviewed and examined the girls. The prosecution witnesses who attested to the serology and DNA testing of the clothing did not testify until Tuesday of the following week.

After the prosecution rested, the defense called witnesses, including defendant, but decided not to call its expert to testify regarding the forensic test results on any of the items of clothing.

During the rebuttal portion of the prosecutor's closing argument, the prosecutor made several statements which defendant claims amounted to misconduct. We defer a more detailed discussion of the specific statements to part 2 below.

The jury found defendant guilty on all three counts. Defendant was sentenced to 67 years to life in state prison. This appeal followed.

### DISCUSSION

**1.    The Requests to Continue Trial**

Defendant argues the trial court committed prejudicial error by refusing to grant a continuance of trial to allow his expert time to evaluate the new serology evidence proffered by the prosecution regarding Y.M.'s T-shirt and pants. We are not persuaded.

6

The grant or denial of a motion to continue trial rests within the broad discretion of the trial court. (*People v. Strozier* (1993) 20 Cal.App.4th 55, 60.) Reversible abuse of discretion occurs only when the court acts arbitrarily, capriciously or outside the bounds of reason. (*People v. Froehlig* (1991) 1 Cal.App.4th 260, 265.) "In deciding whether the denial of a continuance was so arbitrary as to violate due process, the reviewing court looks to the circumstances of each case, ' "particularly in the reasons presented to the trial judge at the time the request [was] denied." ' [Citation.]" (*People v. Courts* (1985) 37 Cal.3d 784, 791 (*Courts*).) It is defendant's burden to establish the existence of an abuse of discretion. (*Strozier*, at p. 60; accord, *People v. Johnson* (1970) 5 Cal.App.3d 851, 859 [whether defendant "affirmatively demonstrated that justice requires a continuance is a factual matter" and absent "clear abuse of discretion," a reviewing court will not disturb the trial court's finding].)

Continuances in criminal cases may only be granted on an *affirmative* showing of good cause. (§ 1050, subd. (e).) "Motions to continue the trial of a criminal case are disfavored and will be denied unless the moving party, under . . . section 1050, presents affirmative proof in open court that the ends of justice require a continuance." (Cal. Rules of Court, rule 4.113.) While a trial court should not exercise its discretion to deny a continuance that would unfairly deprive a defendant of a reasonable opportunity to prepare a defense (*People v. Snow* (2003) 30 Cal.4th 43, 70), it is nonetheless not required to indulge every request for additional time where good cause is not *clearly identified* (*Courts*, *supra*, 37 Cal.3d at pp. 791-792).

The record here shows the court correctly considered the multiple relevant factors in ruling on defendant's motions. When the parties appeared for trial on March 11, 2013, defense counsel answered ready. Trial was put over until March 13. Defense counsel, having reconsidered his decision to answer ready, filed a written motion to continue pursuant to section 1050, which was heard and denied in the master calendar department on March 13. The parties were sent out to a trial department that date and defendant renewed his request. The trial department denied the request *without prejudice*, and the case proceeded to voir dire.

7

On Thursday, March 14, with the prosecution's report of the new test results expected the next day, the court *granted* defendant's request for a brief continuance until the following Tuesday morning. The test results, as well as the T-shirt and pants that were tested, were received by the defense on Friday as anticipated. Defense counsel sought *an additional week-long continuance* when trial resumed on Tuesday, March 19, which the court denied, noting the potential harm and unfairness of further delay to the minor victims. As it turned out, the prosecution's DNA and serology evidence was not presented until the following Tuesday anyway, because the prosecution called the victims, their mother, investigating officers and rape counselors to testify first. Defendant was therefore not required to respond or address that evidence for over a week. Defendant does not explain why that additional time – the amount of time he requested – was insufficient for his expert to complete his analysis.

The trial court's responses on the record indicate a receptiveness to considering appropriate continuances, even a mistrial, if presented with an explanation why additional time was needed by the defense expert. But, once the report was received and defendant had the benefit of a brief continuance, the court properly resolved defendant's request for additional time consistent with its statutory mandate to expedite proceedings to the "greatest degree that is consistent with the ends of justice" (§ 1050, subd. (a)), aware that not only defendant, but the People, the victims and the witnesses have a statutory right to an "expeditious disposition." (*Ibid*.; see also *People v. Doolin* (2009) 45 Cal.4th 390, 450 [in resolving motion for continuance, trial court must be mindful of " ' " ' 'whether substantial justice will be accomplished or defeated by a granting of the motion' " ' "].)

## 2.     The Prosecutor's Statements During Closing Argument

Defendant contends the prosecutor committed misconduct during closing argument which prejudicially impacted the jury's deliberations and verdict. Respondent contends there was no misconduct, that only one instance of allegedly improper argument was preserved for appeal by a timely objection, and that, in any event, defendant has not shown any misconduct or resulting prejudice. Acknowledging, at least in part, respondent's forfeiture argument, defendant also casts his claim of misconduct as one of

ineffective assistance of trial counsel. We agree with respondent that all but one instance of improper argument was forfeited by failure to object in the trial court, and that there is no showing of misconduct. Accordingly, both the misconduct argument, and the related ineffective assistance argument, fail.

### a. The prosecutor's argument

Defendant challenges various statements made by the prosecutor during the rebuttal portion of his closing argument. Because our determination of the propriety of the prosecutor's argument must be considered in context (*People v. Dennis* (1998) 17 Cal.4th 468, 522 (*Dennis*)), we set forth the material portions of the rebuttal argument, highlighting with italics the statements challenged by defendant.

"I'm going to be fairly brief. . . . I'm just going to . . . reiterate [a] few points and send you off to do the rest of your work. I'm going to talk about penetration, how penetration in this case has been proved. I'm going to talk about [G.M.'s] statements and sort of how I believe it's appropriate to sort of look at my burden in this case as opposed to the defendant's burden, and I'm going to start there. It's my burden. I'm not in any way trying to shift the burden to the defense because it's my evidence that has to prevail.

"*But this is what you have to believe to find the defendant not guilty in this case. You have to believe that the girls made up their statements. You'd have to believe that [Y.M.] was intending to get [defendant] kicked out of the house when she told her mom that nothing happened to her when she was first confronted. Remember, that was her first statement to mom. 'What happened when I was gone?' 'Nothing.' . . . That was somehow part of the plan.*

"You would have to believe that the defendant – the only way the semen got anywhere near the defendant's socks was by his masturbating. You'd have to believe that, even though he wasn't really able to give us any details. . . . .

"*You'd have to believe that both girls were able to sort of put together a package of lies and tell them repeatedly to multiple people over multiple days and subject themselves to medical examinations over multiple days. You would have to believe the defense expert's explanation of the injuries found on [Y.M.'s] genitalia.*

9

"*I don't often argue that a witness should be wholly disregarded. I honestly don't.* The defendant, I believe much of his testimony. . . . There is a lot of stuff in his statement that is believable.

"*I'll argue to you that you should completely disregard the defense medical expert*, and I'm going to argue that because – not because of her educational background, but she seemed to be agitated by that, and I apologize. I kind of used that against her. Because she was unwilling to accept that there was any chance that the evidence upon which she relied was different than – materially different, something that would make a difference than the other nurse that was able to see the child . . . even after she admitted that some of the images she had to look at were blurred. I'd urge you to reject her testimony because she wouldn't even concede that blurry photos may not provide exactly the same amount of detail that you'd get from looking at something in real life. . . .

". . . . So the defense actually does a really good job at trying to poke holes in the evidence that's been presented to you. *I don't believe, and I am arguing to you that you should not believe that* [*sic*] *what their arguments are*.

"[*G.M.'s*] *statements were difficult, and I don't believe those things happened either. I don't want to believe that the defendant sodomized her and duct taped her mouth closed when she screamed. I don't want to believe that.*

"The important part for you is that's not something you have to make a decision on. I mean, you saw. They went and did a search warrant at their old house where she's sort of describing her first statement to Ms. Farrell about what happened, about how there was this piece of wood he used to lock the door. You saw the photos of the door with a piece of wood on it. I don't know. I don't want to believe it happened, and it's not something for you to decide. *But even though I don't want to believe it happened, unfortunately I believe it did, and I believe it did because all of the details she gave. I believe it did because Ms. Farrell said the best way we get accurate information from a child of this age is to just allow them to talk. She was giving them an opportunity, and she did.*" (Italics added.)

At this point, defense counsel objected and the following colloquy occurred.

10

"[DEFENSE COUNSEL]: Your Honor, there's an objection – I'm sorry Mr. Reinert [(the prosecutor)] – about what Mr. Reinert believes the evidence –

"THE COURT: Yes. The jurors are reminded the belief of either counsel is not relevant. [¶] Why don't you adjust your wording, Mr. Reinert."

The prosecutor then concluded that portion of his rebuttal and moved on to discussing the evidence supporting a finding of penetration within the meaning of section 288.7. No further objections were made.

### b. Forfeiture

"When a defendant believes the prosecutor has made remarks constituting misconduct during argument, he or she is obliged to call them to the court's attention by a timely objection. Otherwise no claim is preserved for appeal." (*People v. Morales* (2001) 25 Cal.4th 34, 43-44 (*Morales*); accord, *People v. Turner* (2004) 34 Cal.4th 406, 432 [failure to object or seek court's admonition to numerous comments by prosecutor vouching for the credibility of expert witnesses and expressing his personal admiration for their integrity resulted in forfeiture of claim on appeal].) Forfeiture is justified because the failure to timely object to improper argument deprives the trial court of an "opportunity to consider the objection and give appropriate admonitions when the alleged misconduct first occur[s], or to prevent additional remarks of a similar nature from being made." (*People v. Bemore* (2000) 22 Cal.4th 809, 846.)

Respondent contends, and defendant concedes, as he must, that an objection was only made to the statements regarding the prosecutor's personal beliefs about the credibility of G.M. (the last of the italicized statements above). As for the other italicized statements challenged by defendant, appellate review of those statements was forfeited by defendant's failure to timely object in the trial court and to seek an appropriate admonition of the jury by the trial court. (*Morales*, *supra*, 25 Cal.4th at pp. 43-44; see also 5 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Trial, § 771, p. 1198 [prosecutor's injection of personal belief or opinion about credibility of witness is the type of error "often held harmless or waived by failure to object or cured by the court's admonition"].) However, because defendant has also raised a related ineffective

11

assistance claim, we consider the merits of defendant's misconduct claim and conclude that none of the challenged statements amount to prosecutorial error or misconduct.

### c. Analysis of the challenged statements

Our Supreme Court has summarized the standards for evaluating a claim of prosecutorial misconduct as follows. "A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury. Furthermore, and particularly pertinent here, when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*Morales*, *supra*, 25 Cal.4th at p. 44; accord, *People v. Cole* (2004) 33 Cal.4th 1158, 1202-1203.) In assessing the prosecutor's argument, we must not lose sight of the "presumption that 'the jury treated the court's instructions as statements of law, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.' [Citation.]" (*Morales*, at p. 47.)[4]

As to the first set of italicized statements set forth above, defendant argues they were objectionable and amounted to misconduct because they misstated the burden of proof, improperly suggesting to the jury that it had an all-or-nothing choice to either believe both of the young girls completely, or reject all of their testimony, instead of considering the evidence as to each charge separately. Reading the prosecutor's

---

[4]    Before argument began, the court instructed the jury, in relevant part, that they alone "decide what the facts are . . . based only on the evidence that has been presented," that "[i]f you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions," and that "[n]othing that the attorneys say is evidence. In their opening and closing arguments, the attorneys discuss the case, but their remarks are not evidence." (CALCRIM Nos. 200 & 222.) The jury was duly instructed of its duty to exalt the evidence over the argument of counsel.

argument in context, we cannot agree that the challenged statements misdirected the jury as to the relevant burden of proof.

Nothing in the prosecutor's argument expressly or impliedly exhorted the jurors to only consider both victims' statements jointly in their totality, or to otherwise disregard the specific elements and victims as to each separate count. The argument reflects the prosecutor's attempt to respond to the version of events offered by the defense, namely that defendant had not touched either of the girls, along with the related inference that the girls therefore had made up their stories or were both being coached to lie. The prosecutor properly argued the jury should consider which witnesses were more credible.

Moreover, the jury was correctly instructed on the law regarding the burden of proof, including CALCRIM No. 220. The prosecutor also repeatedly noted in his argument that he bore the burden of proof beyond a reasonable doubt. And, immediately upon conclusion of the rebuttal argument, the trial court completed its instructions to the jury, starting with the following. "Ladies and gentlemen, each of the counts charged in this case is a separate crime. You must consider each count separately and return a separate verdict for each one." On such a record, we cannot find that anything in the prosecutor's rebuttal argument regarding the burden of proof rendered the trial fundamentally unfair or constituted a deceptive or reprehensible attempt to mislead the jury. (*Morales*, *supra*, 25 Cal.4th at p. 44.)

As to the second set of italicized statements regarding the credibility of the defense expert, defendant argues the prosecutor improperly injected his own opinion about the expert based on information outside the record, insinuating that based on his experience in other trials he had never found an expert's credibility so wanting as to argue to a jury that his or her testimony should be wholly disregarded. Once again, we find no error or misconduct.

A "prosecutor's reference to his or her own experience, comparing a defendant's case negatively to others the prosecutor knows about or has tried, is improper. [Citation.] Nor may prosecutors offer their personal opinions when they are based solely on their experience or on other facts outside the record." (*People v. Huggins* (2006) 38 Cal.4th

13

175, 206-207 (*Huggins*).) But, our review of the record discloses no such improper comment by the prosecutor. The first part of the statement to which defendant finds fault ("I don't often argue that a witness should be wholly disregarded") was followed by a discussion of testimony by defendant (not the expert), with the prosecutor pointing out that there were portions of defendant's testimony that were credible.

The prosecutor then moved on to the defense expert, urging the jury to find, *based on the evidentiary record*, that the expert's testimony should be disregarded because she lacked credibility. It was permissible for the prosecutor to so argue. "The prosecutor may argue any inference from the evidence. [Citation.] Accordingly, if the prosecutor's expression of belief or opinion is based on that inference, rather than personal belief or opinion, it is entirely proper." (5 Witkin & Epstein, *supra*, Trial, § 775, p. 1202; accord, *People v. Adcox* (1988) 47 Cal.3d 207, 259 (*Adcox*) [alleged statement of personal belief by prosecutor was not misconduct because "he was 'merely presenting his views of deductions and inferences warranted by the evidence' "].)

The prosecutor's assertion the defense expert should not be believed was tied to his assessment of her testimony, specifically her refusal to accept the possibility that her opinions could have been impacted by the fact she did not personally examine the girls as the prosecution expert had, but rather, based her opinions solely on review of the records and oftentimes blurry photographs and video. Thus, the prosecutor's opinion of the defense expert, as expressed to the jury, was tethered to the evidence and was therefore proper. Moreover, "[h]arsh and vivid attacks on the credibility of opposing witnesses are permitted, and counsel can argue from the evidence that a witness's testimony is unsound, unbelievable, or even a patent lie." (*Dennis*, *supra*, 17 Cal.4th at p. 522.)

Finally, as to the last set of italicized statements regarding the credibility of G.M., defendant argues the prosecutor engaged in an improper form of vouching by repeatedly stating his personal belief about the believability of G.M.'s testimony, despite some of her inconsistent statements and partial recantations. There was no improper vouching or other misconduct. "The general rule is that improper vouching for the strength of the prosecution's case ' "involves an attempt to bolster a witness by reference to facts outside

14

the record." ' [Citation.]" (*Huggins*, *supra*, 38 Cal.4th at p. 206.) The argument regarding G.M.'s credibility was founded on the evidentiary record related to her testimony. It did not constitute misconduct under federal or state law.

### d. Ineffective assistance claim

Defendant argues, in the alternative, that if this court finds the misconduct argument forfeited, then the court should find defendant's trial counsel rendered ineffective assistance by failing to object to all of the prosecutor's allegedly objectionable statements. The burden is on defendant to establish ineffective assistance by a preponderance of the evidence. (*People v. Ledesma* (1987) 43 Cal.3d 171, 218.) A defendant "must show both that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates, and that it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings." (*People v. Cudjo* (1993) 6 Cal.4th 585, 623, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-696.) On direct appeal, this burden is stringent. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

As explained above, we have concluded that none of the statements challenged by defendant amounted to error or misconduct by the prosecutor. Trial counsel cannot be deemed to have provided ineffective assistance for failing to object to proper argument. In any event, the failure to object to evidence or argument " 'rarely constitutes constitutionally ineffective legal representation . . . .' [Citation.]" (*Huggins*, *supra,* 38 Cal.4th at p. 252; accord, *People v. Ghent* (1987) 43 Cal.3d 739, 772-773 [rejecting contention counsel's failure to object during prosecutor's closing argument amounted to ineffective assistance because counsel "may well have tactically assumed that an objection or request for admonition would simply draw closer attention to the prosecutor's isolated comments"]; *People v. Harris* (2008) 43 Cal.4th 1269, 1290 [same]; *Adcox*, *supra*, 47 Cal.3d at p. 261 [same].) Defendant has not established any basis for finding ineffective assistance of his trial counsel.

## DISPOSITION

The judgment of conviction is affirmed.

GRIMES, J.

We concur:

FLIER, Acting P. J.

KUSSMAN, J.*

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16